**Benjamin H. WARREN, Employee-Appellant below, Appellant,**

v.

**GENERAL MOTORS CORPORATION, Employer-Appellee below, Appellee.**

Supreme Court of Delaware.

Submitted June 18, 1975.

Decided Sept. 3, 1975.

Oliver V. Suddard, Wilmington, for employee-appellant below, appellant.

Max S. Bell, Jr., Richards, Layton & Finger, Wilmington, for employer-appellee below, appellee.

Before HERRMANN, Chief Justice, QUILLEN, Chancellor, and MARVEL, Vice-Chancellor.

HERRMANN, Chief Justice:

In this workmen's compensation case, the employee appeals from a Superior Court ruling affirming the denial by the Industrial Accident Board of an award for occupational disease. At issue is whether the employee's condition, found to be an occupational disease by the Board, is compensable under Delaware's Workmen's Compensation Statute, 19 Del.C. § 2301 *et seq.* The Board and the Superior Court held in the negative. We agree.

I

The employee went to work for this employer in September, 1967. His work was to fasten tracks to the bottom of automobile seats. In order to bolt down the tracks, continuing use of a vibrating air gun, weighing approximately nine to ten pounds, was required. In December, 1967, the employee complained of numbness in his left index finger and thumb. The same symptom occurred in June, 1968, in the right ring finger. Similar complaints followed in October, 1969. In February, 1971, the employee described numbness in the tips of his fingers of both hands, and ultimately left this employment in March, 1971, after his entire right hand became numb.

The employee's condition was diagnosed as carpel tunnel syndrome—the overcrowding of vessels, tendons, and nerves in the portion of the wrist known as the carpel tunnel, resulting in entrapment of, and consequent pressure on, the right median nerve, and causing numbness in the hands, wrists, and arms. An operation was performed on the employee's right wrist in April, 1971, with a subsequent operation for the same condition in the left wrist in July, 1971. Contending that his injury was an occupational disease caused by the repetitive trauma of the air gun's vibrations, the employee sought workman's compensation.

The Board found as fact that the employee's condition arose out of and in the course of his employment due to the "extended use of the air gun," thus qualifying as an occupational disease within the meaning of 19 Del.C. § 2301(3) & (10).[1] However, the Board also found that the root cause of the employee's disease was predisposition to carpel tunnel syndrome, as was admitted by his doctor before the Board:

I think that the end result of the process which was to have a squeezed median nerve or carpel tunnel syndrome began first with the patient's predisposition. I say that because many people will do

---

1. These provisions read:
"§ 2301(3). 'Compensable occupational diseases' includes all occupational diseases arising out of and in the course of employment only when the exposure stated in connection therewith has occurred during the employment and the disability has commenced within 5 months after the termination of such exposure."

"§ 2301(10). 'Injury' and 'personal injury' mean violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated and compensable occupational diseases arising out of and in the course of the employment."

things that cause carpel tunnel syndromes to develop in a few of them, so that there is reason to believe that an anatomic predisposition exists.

Finally, the Board found that the employee's condition was not a natural incident of his occupation, inasmuch as the employer's plant had only three or four recorded instances of carpel tunnel syndrome out of a work force of more than two thousand persons using air guns over the previous four years—a frequency of but two-tenths of one percent.

In the light of these findings and *Air Mod Corporation v. Newton*, Del.Supr., 215 A.2d 434 (1965), the Board concluded that the employee's occupational disease was not compensable. In *Air Mod*, this Court stated:

> . . . that a compensable occupational disease, within the meaning of our Act, is one resulting from the peculiar nature of the employment, i. e., from working conditions which produce the disease as a natural incident of the particular occupation, attaching to that occupation a hazard different from, and in excess of, the hazards attending employment in general. (215 A.2d at 442.)

∎ In essence, because of the employee's predisposition and the scarcity of carpel tunnel syndrome within the employee's particular occupation, we find that sufficient substantial evidence exists to support the conclusion that the employee's condition is not a natural incident of his occupation. As noted by the Board, "claimant's occupational disease resulted from the peculiar nature of the employee rather than from the peculiar nature of the employment." [2]

Furthermore, the evidence shows that the employee's condition is a hazard both of employment in general and of nonem-

ployment life. Carpel tunnel syndrome was stated by the employee's doctor as capable of being produced in predisposed persons in any occupation requiring ample or repetitive use of the hands, e. g., secretaries, and among housewives in general.

It should be emphasized, however, that the rule of *Air Mod* would not have necessarily precluded recovery here, even for persons predisposed to a disability. Evidence of a higher incidence of carpel tunnel syndrome within the employee's particular occupation could have warranted a different result. Under those circumstances, the condition might have been classified as more generally susceptible to a particular occupational function and, consequently, a natural incident of the occupation. The lack of a more reasonable connection between the resultant disability and the nature of the particular employment is fatal to the employee's claim of a compensable occupational disease.

## II

∎ The employee also contends that *Milowicki v. Post and Paddock, Inc.*, Del. Supr., 260 A.2d 430 (1969), has modified the *Air Mod* test so that the measuring rod against which a particular occupation may be considered excessively hazardous is not "employment in general", but rather "non-employment life." Therefore, the employee asserts that "[i]f the exertion at work was greater than the exertions of non-employment life, the exertion at work was to be determined unusual for the purpose of the Act even though it may have been usual for the job." There is no merit to this argument.

In *Milowicki* (not an occupational disease case), the claimant's herniated disc was not deemed an accident due to the fact that the exertion of bending down to pick up two envelopes on the floor was "quite

2. Further buttressing this conclusion is the fact that while the employee used the air gun exclusively with his right hand, carpel tunnel syndrome occurred in both wrists at approximately the same time.

usual for her type of employment; and it was one no greater than she would experience in her ordinary non-employment life." 260 A.2d at 432. *Milowicki* is not inconsistent with *Air Mod.* We sought to make clear in *Air Mod* that a common element indigenous to our statutory definitions of compensable occupational disease is the "distinctive relation of the disease to the nature of the employment, as contrasted with diseases which might just as readily be contracted in other occupations, *or* in everyday life, apart from employment." 215 A.2d at 441–42 (emphasis added). Under the language in both *Air Mod* and *Milowicki*, the hazard occasioning a compensable occupational claim must not exist either in employment generally or in everyday life.

\*    \*    \*    \*    \*    \*

Affirmed.