Garry V. ANDERSON,
Claimant-Appellant,

v.

GENERAL MOTORS CORPORATION,
Employer-Appellee.

Supreme Court of Delaware.

Submitted Feb. 16, 1982.

Decided Feb. 25, 1982.

Arlen Mekler (argued), Wilmington, for claimant-appellant.

Max S. Bell, Jr. (argued), of Richards, Layton & Finger, Wilmington, for employer-appellee.

Before McNEILLY, QUILLEN and HORSEY, Justices.

PER CURIAM:

In this workmen's compensation case, the employee appeals from the Superior Court ruling affirming the denial by the Industrial Accident Board of an award for occupational disease.

At issue is (a) the Court's refusal to remand the case even though the Board had misstated the test for establishing the existence of a compensable occupational disease; and (b) the Court's ruling that there was insufficient evidence in the record to support a finding that the employee's diagnosed condition—"allergic rhinitis" (inflammation of the nasal mucous membrane caused by allergies)—was a natural incident of the employee's employment by General Motors. We affirm.

There was insufficient evidence as a matter of law to sustain the employee's claim of having incurred an occupational disease, allergic rhinitis, from his employment at General Motors' Delaware assembly plant. Hence, the Board was correct in rejecting the employee's claim for occupational disease benefits; and the Board's error, described below,* was harmless. We also affirm Superior Court's ruling as to the insufficiency of the evidence, though for reasons

---

* We refer to the Board's legally irrelevant conclusion that employee's allergy-induced breathing difficulty did not result from "a peculiar hazard at General Motors different from the hazard attending employment at most other industrial sites in the surrounding area."

other than those relied upon by the Court below.

■ We agree with Superior Court that the Board erred in relating its factual findings as to the air quality "hazard" at General Motors with comparable employment conditions "attending employment at most other industrial sites in the surrounding area." Rather, the complained-of dust and fumes at the General Motors assembly plant should have been related to and compared with "the [similar] hazards attending employment in general." *See, Air Mod Corporation v. Newton*, Del.Supr., 215 A.2d 434, 442 (1965). Applying the *Air Mod* test for a compensable occupational disease to the facts of this case, we find the Board's error to have been harmless.

The record's evidence, viewed in a light most favorable to employee, was insufficient as a matter of law to support an award for occupational disease based on the employee's diagnosed allergic rhinitis. Employee's testimony—that before 1977 he had been asymptomatic as to nasal congestion causing breathing problems either on or off the job (he had been employed by General Motors since 1973) and that thereafter his nasal congestion grew gradually though progressively worse—was legally insufficient for his ailment to be denominated a compensable occupational disease under 19 *Del.C.* § 2301(4).** *Air Mod Corporation v. Newton, supra.* Further, even if employee's ailment, "allergic rhinitis", were a pre-existing but latent condition, evidence of employee's physician that it was aggravated or "triggered" on the job is also insufficient.

The question is whether employee's ailment was occupational in nature; and simply because there was evidence to believe it had either been contracted or aggravated on his employer's premises is legally insufficient to find it to have been an occupational disease. *See, Air Mod v. Newton, supra.* There we quoted with approval the New York Court of Appeals in *Detenbeck v. Gen-*

eral Motors Corporation, N.Y.Ct.App., 309 N.Y. 558, 132 N.E.2d 840 (1956):

"* * * An employee who is physically handicapped may contract an occupational disease more easily because of his weakened condition, but the test of what is an occupational disease is the same whether the employee is decrepit or in normal health. *There must be a recognizable link between the disease and some distinctive feature of the claimant's job.* This test is not met where disability is caused by an aggravation of a condition which is not occupational in nature. If an employee contracts an occupational disease, he is not to be prejudiced by reason of a preexisting illness or defect, but neither is he to be preferred over other employees by creating a different class of compensable disabilities for his benefit." 215 A.2d at 442 (emphasis added).

As we then stated in *Air Mod v. Newton, supra* :

"These conclusions were premised upon the earlier statements of the New York Court of Appeals in *Harman v. Republic Aviation Corp.* [298 N.Y. 285, 82 N.E.2d 785] supra:

'An ailment does not become an occupational disease simply because it is contracted on the employer's premises. *It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question.* There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. * * *' "

215 A.2d at 442 (emphasis added).

This Court in *Air Mod*, after expressing accord with the New York Court of Appeals rationale and definition of an occupational disease, defined a compensable occupational disease under our workmen's compensation statute to be:

---

** 19 *Del.C.* § 2301(4) states:

" 'Compensable occupational diseases' includes all occupational diseases arising out of and in

the course of employment only when the exposure stated in connection therewith has occurred during employment."

"... one resulting from the peculiar nature of the employment, i.e., from working conditions which produced the disease as a natural incident of the particular occupation, attaching to that occupation a hazard different from, and in excess of, the hazards attending employment in general. (citation omitted). 215 A.2d at 442.

██ Paraphrasing the above, for an ailment or disease to be found to be a compensable occupational disease, evidence is required that the employer's working conditions produced the ailment as a natural incident of the employee's occupation in such a manner as to attach to that occupation a hazard distinct from and greater than the hazard attending employment in general.

Again, returning to the evidence of record, neither the employee's testimony nor that of his treating physician was sufficient to establish that the working conditions at the General Motors plant produced his ailment, allergic rhinitis, as a natural incident of his occupation. The treating physician, an allergy specialist, expressed his opinion that dust and fumes at the plant had "triggered" employee's breathing difficulty. However, his testimony was couched solely in terms of "expectation" and "suspicion"; and the physician lacked any personal knowledge of the working conditions at the General Motors plant or, more specifically, the existence and level of dust and fumes. What direct knowledge the physician had of the atmosphere in automobile assembly plant facilities was limited to his recollection of the plant conditions of a New Jersey assembly plant in which he worked 30 years ago.

Furthermore, the physician diagnosed employee's breathing allergy as being attributable not only to dust (household as well as factory) but to nature's pollens from ragweed, trees and grass. In sum, employee's allergy-induced breathing difficulty resulted from the "stimuli [of] the everyday world." Finally, to illustrate the commonplace nature of employee's ailment, the physician stated that 8 out of 10 of his daily office patients from his practice (in northern Delaware) suffered from allergic rhinitis and none of them worked at the General Motors plant.

The employer's evidence was no more helpful to employee. Its records contained no mention by employee, or any other employee, of any complaint of plant dust or fumes. Even when employee took extended sick leave on two or more occasions in 1978 and when he ultimately quit his job he recorded no complaint as to the plant's dust or fumes. In addition, employer's plant engineer testified that the plant's air quality at all times complied with environmental laws and regulations.

In the absence of any persuasive causal evidence that employment at the General Motors assembly plant had a tendency to induce allergic rhinitis, we must affirm, for the reasons stated above. This is not to say that a person predisposed to a disability may, in no event, establish disability from an occupational disease. As stated, if there had been evidence of any incidence of allergic rhinitis within the employee's work force at the General Motors plant or other evidence of a causal connection, the case would be different. *Cf. Warren v. General Motors Corporation*, Del.Supr., 344 A.2d 248 (1975). But as to this case, the only reasonable conclusion that can be drawn from the available evidence is that "claimant's occupational disease resulted from the peculiar nature of the employee rather than from the peculiar nature of the employment." 344 A.2d at 250. Stated another way, as a matter of law, employee failed to establish by substantial competent evidence that his ailment resulted from the peculiar nature of the employment rather than from his own peculiar predisposition. It does not constitute an occupational disease. *Warren v. General Motors Corporation, supra.*

Finally, we are not persuaded that our *Air Mod* standard for determining a compensable occupational disease is in need of change and should be either overruled or modified to allow recovery in a case such as this.

Affirmed.