Guy G. PATTERSON and Katherine M. Patterson, Personal Representatives of the Estate of Melvina D. Murray and Shawn D. Murray, a minor by his Next Friends, Guy G. Patterson and Katherine M. Patterson, Plaintiffs,

v.

KENT GENERAL HOSPITAL, INCORPORATED, a Delaware corporation and Charles Allen, M.D., Defendants.

Civ. A. No. 80–593.

United States District Court, D. Delaware.

June 22, 1982.

I. Barry Guerke of Parkowski, Noble & Guerke, Dover, Del., for plaintiffs.

Mason E. Turner, Jr. of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for defendant Kent General Hosp., Inc.

Samuel R. Russell of Biggs & Battaglia, Wilmington, Del., for defendant Charles Allen, M.D.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

Guy G. Patterson and Katherine M. Patterson, personal representatives of the estate of Melvina D. Murray ("Murray"), and Shawn Murray, a minor, have brought this action[1] seeking to recover damages from Kent General Hospital, Incorporated ("Kent"), and Charles Allen, M.D. ("Allen"), jointly and severally for their alleged negligent diagnosis, examination and treatment of Murray which proximately caused her death. (Docket Item ["D.I."] 1.) Kent and Allen deny that they were negligent in the diagnosis, examination and treatment of Murray and deny that their actions caused Murray's death. (D.I. 11.) Further, they claim, in their third affirmative defense, that the plaintiffs' claims are barred by the provisions of the Delaware Workmen's Compensation Act, 19 *Del.C.* § 2304. (D.I. 33.) Kent and Allen have moved this Court pursuant to Rule 56, F.R.Civ.P., to enter an order granting summary judgment in their favor on the grounds that the Workmen's Compensation Act ("the Act") bars the plaintiffs' claims because the Act provides plaintiffs' exclusive remedy.

### I. *Facts*

In February, 1976, Kent decided to institute a tuberculosis screening program for all of its employees based upon guidelines set forth by the American Hospital Association under the Tuberculosis Control Programs for Hospital Employees. (D.I. 58 at 10–12.) The first step of the screening program included a tuberculosis skin test. If the initial skin test proved positive, then the employee would be notified to take an x-ray examination and would be notified of the result of that examination. (D.I. 58 at 18.) If, according to the x-ray examination, there were a suspicion of tuberculosis, then the employee would be instructed to see either a private physician or Kent's Employee Health Physician for further tests and treatment, if treatment were necessary. (D.I. 58 at 19; D.I. 59 at 6.)

During April 1977, Murray, a licensed practical nurse at Kent, participated in the first step of the tuberculosis screening program which resulted in a positive skin test. Thereafter, several x-rays were taken. (D.I. 32, ¶ 10.) The first x-ray which remained in Murray's hospital records was taken in December, 1978, and revealed an infiltrate in the upper left lobe of the lung. (D.I. 84 at 13, 20.) Because of this suspicious infiltrate, defendant Allen, a physician licensed to practice medicine in Delaware and a full-time employee of Kent with the title of Emergency Room Physician, was directed by his supervisor, John J. Lazzari, M.D., to treat Murray along with 12 other employees of the hospital with suspicious x-rays and positive tuberculosis skin tests. (D.I. 32.) Allen diagnosed Murray's condition as tuberculosis, conducted other tests to verify and monitor Murray's condition and prescribed medication to eradicate it. (D.I. 84 at 27, 54–55.) On May 22, 1979, another x-ray was taken pursuant to Allen's request, which did not indicate any improvement or deterioration in her condition. (D.I. 84 at 53.) The next time Allen saw Murray as a patient was on August 16, 1979. (D.I. 84 at 39.) At that time, she came into the Emergency Room with a chest pain on the anterior left side of the chest. Allen diagnosed this condition as a chest wall pain, but did not believe that the pain was caused by tuberculosis. Allen did not refer to a radiologist for an x-ray because she did not want one, but he did give her medication for her discomfort. About three days later, Allen saw Murray in the

---

1. Plaintiffs Guy G. Patterson, Katherine M. Patterson, and Shawn Murray are citizens of Maryland. Defendant Kent is a corporation organized under the laws of Delaware and defendant Allen is a citizen of Delaware. Therefore, jurisdiction exists by virtue of 28 U.S.C. § 1332(a)(1).

hallway of the Emergency Room and she stated that she had no further pain. (D.I. 84, at 39–41.) According to Allen, Murray informed him at the end of August or the beginning of September of 1979 that she was going to see her family physician, Dr. Gerald McCarthy, for the treatment of her condition and that he would not see her again as a treating physician. (D.I. 84 at 42.)

On January 8, 1980, Murray came into the Kent Emergency Room with a complaint of abdominal pain and was seen by Dr. William Leitzinger ("Leitzinger"), an Emergency Room Physician. (D.I. 57 at 3–5.) Leitzinger tentatively diagnosed Murray's condition as pancreatitis, and sent her for various diagnostic tests, including a urinalysis, blood count and serum anylase, and prescribed medication for her acute pain. (D.I. 57 at 6–7.) On January 9, 1980, Leitzinger reexamined Murray, noted that her pain had generally subsided, ran additional laboratory tests and ordered an x-ray, subsequently scheduled for January 21, 1980. (D.I. 57 at 8–10.) Apparently the x-rays were taken on January 29, 1980, and Murray, on January 31, 1980, brought the x-ray to Dr. Wellford Inge, Jr. ("Inge"), another private physician with staff privileges at Kent. (D.I. 85 at 8.) Inge had previously seen Murray in the hospital, while making his rounds, and detected a lump on her left supraclavicular and told her that he was "worried about it." (D.I. 85 at 7.) According to Inge, the January 29, 1980 x-ray showed a nodular infiltrate in the midlung and that he proceeded to schedule a left scalene node biopsy and a bronchoscopy with washings which was accomplished on February 6, 1980. (D.I. 85 at 8.) Inge initially diagnosed Murray's condition as cancer and this diagnosis was confirmed by the diagnostic tests. (D.I. 85 at 18–19.) The left scalene node biopsy revealed a poorly differentiated squamous cell carcinoma and the bronchoscopy showed no obvious lesions. *Id.* According to Inge, none of the laboratory reports or any other diagnostic tests which he conducted disclosed that Murray was suffering from tuberculosis. (D.I. 85 at 10.) The only evidence that he had that Murray ever suffered from tuberculosis was that she had worked for a "TB hospital" prior to her employment with Kent and had a positive tuberculosis test as a result of that employment. (D.I. 85 at 10; D.I. 19, Inge's letter to Guerke.) From February until her death on August 17, 1980, Murray remained primarily under Inge's care and was sent for treatment for her cancer to Kent and the Wilmington Medical Center. (D.I. 10, Inge's letter to Guerke.) On August 17, 1980, Murray died as a result of her cancer. (D.I. 19, Medical Record/Death Summary by Keith Hamilton, M.D.; D.I. 72 at PA 11.)

## II. *Workmen's Compensation Act*

Defendants Kent and Allen claim that the plaintiffs are barred by Section 2304 of the Delaware Workmen's Compensation Act which provides:

> Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by this chapter respectively to pay and to accept compensation for personal injury or death by accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies.

Kent and Allen assert that Murray's tuberculosis exposure occurred in the course of her employment and that Allen's alleged negligence occurred in the course of treatment which followed in an unbroken sequence from Murray's positive tuberculosis tests. (D.I. 73 at 7–8.) They argue that "faulty diagnosis of a condition which results from a hazard to which the employee may reasonably be expected to be exposed during employment is 'uniformly held' to be compensable under workmen's compensation acts." *Id.* at 8.

Plaintiffs claim that Murray neither contracted tuberculosis in the course of her employment nor did her "condition" result from a hazard related to her employment. (D.I. 18, ¶¶ 1A(a)(b)(iii) & (vi).) Specifically, they claim that the positive skin test which Allen principally relied upon to form his diagnosis was caused by a previous ex-

posure to tuberculosis when Murray worked in a tuberculosis hospital. *Id.* at (vi). Further, they contend that Murray's "condition" was caused by her cancer which led to her death and that Allen mistakenly diagnosed this condition as tuberculosis during the period that she was under his care. *Id.* at (ii) & (iii).

■■■ Section 2304 generally provides that an employee is required to accept compensation for personal injury or death by accident arising out of and in the course of employment.[2] The Delaware Supreme Court has identified four of the principal concepts or legal theories found in the Act or in the case law which supports a workmen's compensation award. *See Chicago Bridge & Iron Co. v. Walker*, 372 A.2d 185, 187 (Del.Supr.1977). A claimant is entitled to an award when:

(1) He proves that "the injury happened at a fixed time and place and was attributable to a clearly traceable incident of ... [his] employment", *Gray's Hatchery & Poultry Farms v. Stevens*, Del.Super., 7 Terry 191, 81 A.2d 322, 324 (1950); *Faline v. Guido and Francis DeAscanis & Sons*, Del. Supr., 192 A.2d 921, 924 (1963);

(2) He proves that "unusual exertion" in the course of his employment aggravated a pre-existing physical weakness, *Milowicki v. Post and Paddock, Inc.*, Del.Supr., 260 A.2d 430, 432 (1969); *Faline v. Guido and Francis DeAscanis & Sons*, supra at 924;

(3) He proves that he sustained a "compensable occupational disease" as defined in § 2301(4), cf. *Air Mod Corporation v. Newton*, Del.Supr., 215 A.2d 434, 441 (1965);

(4) He proves that his work has had a cumulative detrimental effect on his physical condition, *General Motors Corporation v. McNemar*, Del.Supr., 202 A.2d 803, 806 (1964).

The defendants' assertion that Murray is entitled to a workmen's compensation award is based on the Delaware Supreme Court's third legal theory—that Murray sustained a compensable occupational disease as defined in § 2301(4) and in *Air Mod Corp. v. Newton*, 215 A.2d 434, 441 (Del. Supr.1965).

Section 2301(4) expressly provides that: "[c]ompensable occupational diseases" includes all occupational diseases arising out of and in the course of employment *only when the exposure stated in connection therewith has occurred during employment.* (Emphasis added.)

An employee is entitled to recover a workmen's compensation award only if the compensable exposure occurred during employment. In addition, the employee may recover an award, as a compensable occupational disease, only when the injury resulted "from the peculiar nature of the employment, i.e., from working conditions which produce the disease as a natural incident of the particular occupation, attaching to that occupation a hazard different from, and in excess of, the hazards attending employment in general." *Air Mod*, 215 A.2d at 442. The Delaware Supreme Court requires that substantial evidence be presented to the Court to establish a causal connection between the disease and the employee's working conditions. *See Anderson v. General Motors Corp.*, 442 A.2d 1359, 1361 (Del. Supr.1982).

■■■ After reviewing the record in this case, including the depositions of the hospital personnel, the answers to the interrogatories of the parties and the affidavit of Allen, it is clear that material facts are in dispute so as to preclude summary judgment. For example, there is some evidence supporting the plaintiffs' contention that Murray had been exposed to tuberculosis prior to her employment with Kent and that this prior exposure may have caused

---

**2.** Section 2301(11) provides that personal injury includes:

> violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably

treated and compensable occupational diseases and compensable ionizing radiation injuries arising out of and in the course of employment.

Allen to misdiagnose her condition as tuberculosis rather than to diagnose it properly as cancer. There is also some evidence supporting the defendants' contention that Murray's condition was caused by an exposure to tuberculosis while she was employed at Kent and that such condition was properly diagnosed as tuberculosis. Thus, there is a factual dispute as to whether Murray contracted tuberculosis while she was an employee at Kent. This factual dispute is material because workmen's compensation benefits may be awarded to an employee claiming injury caused by a compensable occupational disease only if he has contracted a disease during the course of employment. Moreover, no evidence has yet been developed on the present record to indicate that the working conditions at Kent produced Murray's tubercular condition "as a natural incident of [her] occupation [as a nurse] in such a manner as to attach to that occupation a hazard distinct from and greater than the hazard attending employment in general." *See Anderson*, 442 A.2d at 1361. Therefore, the motion for summary judgment will be denied.

An order will be entered in accordance with the memorandum opinion.