**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**
**IN AND FOR NEW CASTLE COUNTY**


| | | |
|---|---|---|
| **GEORGE R. BURNS** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **C.A. No. N13C-02-190 MJB** |
| | ) | |
| **RICHARD T. WILSON AND** | ) | |
| **THE LAW OFFICES OF** | ) | |
| **PETER G. ANGELOS, PC** | ) | |
| | ) | |
| | ) | |
| **Defendants** | ) | |


Submitted: October 23, 2014
Decided: January 30, 2015


*Upon Defendant's Motion for Summary Judgment Based on Proximate Cause,* **GRANTED.**


## OPINION


Kevin Gibson, Esquire, Gibson & Perkins PC, 1326 King Street, Wilmington, Delaware 19899, *Attorney for Plaintiff.*

Paul Lukoff, Esquire, Wilks, Lukoff & Bracegirdle, LLC, 1300 North Grant Avenue, Suite 100, Wilmington, Delaware 19806, *Attorney for Defendant.*


**BRADY, J.**


1

# I. INTRODUCTION

This is a legal malpractice action filed by Plaintiff George R. Burns ("Plaintiff") against Defendant Attorney Richard T. Wilson, an individual ("Defendant Wilson"), and Defendant Wilson's employer, the Law Offices of Peter G. Angelos, PC (the "Firm," collectively, "Defendants"). Beginning in May 2010, Defendant Wilson represented Plaintiff in an appeal before the Industrial Accident Board (the "IAB," the "Board"), which the Board denied. Plaintiff has now brought suit against Defendant Wilson, alleging that Defendant Wilson was negligent in his representation of Plaintiff and that this negligence proximately caused the IAB's denial of Plaintiff's claim.[1] Plaintiff claims against the Firm are based on a *respondeat superior* theory.[2]

On October 23, 2014, Defendants presented five motions to the Court: (1) Defendants' Motion for Summary Judgment Based on Proximate Cause; (2) Defendants' Motion for Summary Judgment Based on the Professional Judgment Rule; (3) Defendant's *Daubert*-Based Motion in Limine to Exclude Plaintiff's Liability Expert; (4) Defendants' *Daubert*-Based Motion in Limine to Exclude Dr. Townsend's Causation Opinion; and (5) Defendants' Motion in Limine to Exclude Dr. Sommers' 2014 Opinions.

After the hearing, the Court reserved decision on Defendants' Motion for Summary Judgment Based on Proximate Cause. The elements of a legal malpractice action are (1) the existence of an attorney-client relationship; (2) the failure of the attorney to exercise ordinary skill and knowledge; (3) that the attorney's negligence was the proximate cause of the damage to the client.[3] Defendants have moved for Summary Judgment based on the contention that

---

[1] Complaint, Item 1, at 4.
[2] Complaint, Item 1, at 5. Defendants have admitted that, were Defendant Wilson to be found liable, the Firm would also be liable under *respondeat superior*. Answer, Item 10, at 3.
[3] *Carr v. Levinson*, 1983 WL 472091, *1 (Del. Super. Ct. Oct. 11, 1983).

Plaintiff cannot establish that Defendant Wilson's negligence was a proximate cause of the ruling by the IAB that was adverse to his claim. Because the Motion for Summary Judgment Based on Proximate Cause would be dispositive if granted, the Court deferred decision on the remaining four motions. The Court now finds that the alleged errors by Defendant Wilson could not have been the proximate cause of the Board's denial of Plaintiff's occupational disease claim. For this reason, the Court now **GRANTS** Defendants' Motion for Summary Judgment. The remaining four Motions are thereby rendered **MOOT**.

## II. FACTS AND PROCEDURAL BACKGROUND

Plaintiff was an employee of Kirkwood Tire, Inc. from approximately 1974 to February 10, 2008. On February 11, 2008, Plaintiff became an employee of Edgewater Tire Center, Inc. (collectively, "Employers"), and worked for Edgewater until March 30, 2008. On May 20, 2010, Defendant Wilson filed two initial petitions to the IAB on behalf of Plaintiff. The petitions alleged that Plaintiff had contracted sarcoidosis of the lungs, heart, and brain as a result of exposure to mold, brake dust, and tire dust during the course of his employment by Employers. Employers both disputed the causal connection of Plaintiff's injuries to his employment.

During discovery in the IAB matter, Dr. William Sommers ("Dr. Sommers") provided a report to Employers' counsel, which stated, "Assuming that there is documentation of chronic occupational exposure to *mold and mildew*[,] I find it medically probable that there is some causal relationship between [Plaintiff's] occupational exposure and his diagnosis of sarcoid."[4] Also during discovery in the IAB matter, Plaintiff solicited a report from Dr. Dennis M. Staiken ("Dr. Staiken"), which stated, "Therefore[,] it is my opinion, within a reasonable degree of scientific certainty[,] that exposure to the multiple bioactive compounds, dust molds/microbes

---

[4] Sommers Report, Exhibit C to Item 195, at 7 (emphasis added).

3

was a proximate cause of the development of [Claimant's] physiological reaction in [the] development of sarcoidosis."[5]

An IAB Hearing was held on July 9, 2012. At the hearing, expert testimony was provided by Dr. Cohen and Dr. Montz, on behalf of Employers; and Dr. O'Brien, Dr. Kipen, and Dr. Leschak-Gelman, on behalf of Plaintiff. Neither Employers' counsel nor Plaintiff's counsel called Dr. Sommers or Dr. Stainken. On August 22, 2012, the IAB denied Plaintiff's claim.[6] The Board was not convinced that Plaintiff had been exposed to occupational toxins or that this exposure had caused Plaintiff's sarcoidosis. While Plaintiff's expert Dr. Leschek-Gelman testified that employment in a poorly ventilated office with mold and dust issues is the type of occurrence that can often trigger sarcoidosis, Dr. Leschek-Gelman could not personally testify that Plaintiff had been exposed to these conditions.[7] Dr. Lescheck-Gelman "admitted that her opinion regarding Claimant's work environment [was] based on Claimant's account as opposed to on her personal impression of the layout where Claimant worked."[8] The Board emphasized that "Claimant did not present evidence that specifically identified the chemicals, odors, fumes, etc. to which Claimant was exposed at his workplace other than statements that mold was present."[9]

Plaintiff did present consistent testimony from various lay witnesses that his office would flood after rain or snow and that mold would appear on the floorboards. The Board noted that despite the testimony of water problems, "the evidence presented indicates that Employer[s] routinely passed inspections," including an inspection that was required to approve the loan when the building was purchased by its current owner, Mr. Wilson, in 2008. Mr. Wilson

---

[5] Stainken Report, Item 93, at 13.
[6] IAB Decision, Exhibit A to Item 121.
[7] IAB Decision, Exhibit A to Item 121, at 22.
[8] IAB Decision, Exhibit A to Item 121, at 22.
[9] IAB Decision, Exhibit A to Item 121, at 32.

testified that the building was not cited for water damage, for mold, or for fumes, and he did not have to replace anything such as the baseboards or take additional steps to compensate for damage from water or mold. The IAB reasoned that "if the building flooded as much and for the number of years as reported without having the matter addressed, there would be some structural damage or some area that would need to be addressed or replaced. Similarly, if the building was as toxic as Claimant purports it to be, it would have been identified."[10]

The Board found compelling the testimony of Dr. Montz, who testified on behalf of Employers.[11] Dr. Montz holds a Ph.D. in wildlife sciences and is President of Indoor Air Solutions, an environmental consulting firm, specializing in industrial hygiene.[12] Dr. Montz testified that he has been doing mold testing for twenty-five years and has never heard of mold causing sarcoidosis.[13] Dr. Montz opined that even assuming that mold does cause sarcoidosis, it would have to be determined that mold was present in the environment at sufficiently high levels to get into the air; for mold to be life-threatening, it would have to be all over the walls and not just around the baseboards as Claimant described.[14] Dr. Montz testified that Claimant's evidence was inconsistent in that, if Claimant was as much of a "clean freak" as he claimed to be and cleaned the mold every time it would become visibly present, the mold would never have gotten bad enough to cause serious health problems.[15] Dr. Montz acknowledged that if the building did in fact flood as Claimant described, then mold would have appeared as Claimant represented.[16] However, Dr. Montz questioned whether the extensive flooding described by

---

[10] IAB Decision, Exhibit A to Item 121, at 33.
[11] IAB Decision, Exhibit A to Item 121, at 28.
[12] IAB Decision, Exhibit A to Item 121, at 29.
[13] IAB Decision, Exhibit A to Item 121, at 29.
[14] IAB Decision, Exhibit A to Item 121, at 29.
[15] IAB Decision, Exhibit A to Item 121, at 30.
[16] IAB Decision, Exhibit A to Item 121, at 30.

5

Claimant had actually occurred in light of the fact that the building's current owner did not report any water damage to the building despite recent hurricanes.[17]

The Board accepted the opinion of Employers' expert Dr. Cohn "that it is too speculative to conclude that Claimant's sarcoidosis is causally related to his work exposure."[18] The Board also cited the testimony of Plaintiff's expert Dr. O'Brien, who similarly opined that the nature of sarcoidosis and its causes remain uncertain.[19] While Plaintiff's expert Dr. Kipen referred to three studies showing a correlation between mold exposure and sarcoidosis, the Board pointed out that Dr. Kipen "was careful to stop shy of concluding that mold exposure causes sarcoidosis."[20]

On the basis of all the evidence and testimony before the Board, the Board ultimately concluded that,

> [t]he scientific evidence is lacking to prove mold and the specific mold or other exposure to which Claimant was allegedly exposed causes sarcoidosis or causes Claimant's sarcoidosis. The evidence is lacking pertaining to which specific exposure Claimant had at his workplace that he did not have elsewhere and at what level. Based on the totality of the evidence, the Board does not accept a nexus between Claimant's mold and/or workplace exposure [and] his sarcoidosis.[21]

Thus, the Board's reason for denying the claim was two-fold: First, Claimant did not demonstrate occupational exposure. Second, Claimant did not establish proximate causation.

Plaintiff was dissatisfied with Defendant Wilson's failure to present the opinions of Dr. Sommers and Dr. Stainken before the IAB, and he terminated Wilson and hired another attorney to file a Motion for Reargument before the IAB, seeking to have the Board consider the opinion

---

[17] IAB Decision, Exhibit A to Item 121, at 30.
[18] IAB Decision, Exhibit A to Item 121, at 31.
[19] IAB Decision, Exhibit A to Item 121, at 31.
[20] IAB Decision, Exhibit A to Item 121, at 31-32.
[21] IAB Decision, Exhibit A to Item 121, at 33.

of Dr. Sommers.[22] The IAB denied the Motion for Reargument on the ground that Plaintiff's original counsel (Defendant Wilson) was aware of Sommers' opinion and of the fact that Employers did not intend to call Sommers, and on the ground that testimony about Sommers' opinion was elicited during the hearing.[23] Thus, said the IAB, "[t]his is not a situation of newly discovered evidence, error, or oversight. To the contrary, the fact that Claimant chose not to call Dr. Sommers as a witness was clearly a tactical decision."[24] In light of these findings, the IAB said that allowing a rehearing would be, in essence, "allowing Claimant an opportunity to retry a case in order to implement a new legal tactic—an opportunity clearly barred by the principle of *res judicata*."[25] Upon the advice of his new counsel, Plaintiff did not appeal the denial of his Motion for Reargument.

Plaintiff filed the instant suit against Defendant Wilson and the Firm on February 21, 2013. Plaintiff alleges that Wilson was negligent and committed legal malpractice by failing to introduce the opinions of Dr. Sommers and Dr. Stainken at the IAB hearing.[26] Plaintiff says he believes that these opinions would have provided the "scientific" proof that the Board found lacking in the case, and that, had these opinions been introduced, Plaintiff would have been awarded substantial worker's compensation benefits. Plaintiff asks for damages as well as pre-judgment and post-judgment interest.

Defendants deny any negligence in Wilson's representation of Plaintiff. Defendants suggest that any error by Wilson would have been harmless because Plaintiff did not have a winning worker's compensation claim.[27] Defendants say that Plaintiff could not have

---

[22] IAB Decision on Reargument, Exhibit B to Motion for Summary Judgment, Item 121.
[23] IAB Decision on Reargument, Exhibit B to Motion for Summary Judgment, Item 121.
[24] IAB Decision on Reargument, Exhibit B to Motion for Summary Judgment, Item 121.
[25] IAB Decision on Reargument, Exhibit B to Motion for Summary Judgment, Item 121.
[26] Complaint, Item 1, at 4.
[27] Answer, Item 10, at 3-4.

established his claim because (a) there is no medical consensus that Plaintiff's medical conditions are an occupationally-caused disease; and (b) Plaintiffs injuries were not in fact caused by occupational exposure.[28]   Furthermore, Defendants argue that Wilson was not negligent in failing to present the testimony of Dr. Sommers or Dr. Stainken because occupational disease claims do not require expert testimony.[29]   Defendants further argue that Wilson made a reasonable tactical decision in choosing not to call these experts.[30]

The parties stipulated to an amendment of the Answer, and the Court so ordered on August 1, 2013.  The Amended Answer was filed on August 9, 2013.  In the Amended Answer, Defendants assert that the decisions made by Defendant Wilson fell within the leeway allowed by the Professional Judgment Rule.[31]   The Court granted Defendants' Motion to Amend the Answer a second time on December 5, 2013.  The Second Amended Answer, filed on December 13, 2013, did not assert any substantively new defenses.[32]

On March 18, 2014, the Court granted Plaintiff leave to file an Amended Complaint despite the opposition of Defendants.[33]   Plaintiff filed the Amended Complaint on March 21, 2014.[34]   In the Amended Complaint, Plaintiff pleads the same causes of action—negligence against Defendant Wilson and negligence against the Firm on the basis of *respondeat superior*.[35]  However, Plaintiff makes additional factual allegations in support of these theories.  Namely, Plaintiff alleges that Employers' expert, Dr. Cohn, gave "unsupported and inconsistent testimony," and that Wilson was negligent in not using Sommers' report to cross-examine Dr.

---

[28] Answer, Item 10, at 3-4.
[29] Answer, Item 10, at 4.
[30] Answer, Item 10, at 2.
[31] First Amended Answer, Item 30, at 4.
[32] Second Amended Answer, Item 74.
[33] Order, Item 168.
[34] Amended Complaint, Item 171.
[35] Amended Complaint, Item 171, at 7-11.

Cohn.[36]   Plaintiff also alleges that Plaintiff informed Wilson about the former owner of an adjoining beauty salon who knew of the water leakage problems and who had remedial waterproofing work done in the building.[37]   Plaintiff argues that the testimony of the former owner would have countered the testimony of the current owner of the building, who testified that he had no knowledge of water problems.   Plaintiff says that the evidence of remedial waterproofing work would also have altered the testimony of Dr. Montz, who questioned the extent of the alleged flooding given that the building's current owner had not reported any water problems.[38]   Finally, Plaintiff alleges that his attorney for the Motion for Reargument was told by Wilson that Wilson did not call Sommers because he did not know that he could call a defense expert.[39]

Defendants filed an Answer to the Amended Complaint on March 27, 2014.[40] Defendants put forth the same defenses, denying that Wilson breached his duty on the ground that Wilson's litigation decisions were reasonable exercises of professional judgment and denying proximate causation on the ground that Plaintiff could not have established his claim even if Wilson had presented the additional, omitted expert testimony.[41]

At an April 3, 2014 hearing, the Court engaged in a colloquy with Plaintiff's counsel in which the Court clarified that the Board had ruled against Claimant on two grounds: (1) lack of evidence of occupational exposure, and (2) lack of evidence of proximate causation.[42]   In order for Plaintiff's claim to succeed, he would have to address both of these grounds.   Up until this point, Plaintiff had largely focused on Wilson's alleged negligence in not establishing proximate

---

[36] Amended Complaint, Item 171, at 4.
[37] Amended Complaint, Item 171, at 5.
[38] Amended Complaint, Item 171, at 6.
[39] Amended Complaint, Item 171, at 7.
[40] Answer to Amended Complaint, Item 174.
[41] Answer to Amended Complaint, Item 174, at 3, 5-6.
[42] Hearing Transcript, April 3, 2014, Item 181, at 9.

causation, although Plaintiff had suggested in the Amended Complaint that Wilson was also negligent in failing to present the evidence of the B-Dry company's waterproofing work, which might have been sufficient to convince the Board that there was exposure to mold. The Court gave Plaintiff an additional 90 days discovery to obtain evidence of occupational exposure that Defendant Wilson was negligent in not presenting.[43]

### III. MOTION FOR SUMMARY JUDGMENT BASED ON PROXIMATE CAUSE

On September 18, 2014, Defendants filed the present Motion for Summary Judgment based on a lack of proximate cause.[44] Defendants argue that Plaintiff's claim was denied because the IAB found Plaintiff had not established the "threshold issue" that Plaintiff had been exposed to greater than ordinary levels of mold through work.[45] Thus, Defendants argue, evn had the Board heard Sommers' and Stainken's testimony at the hearing, it would not have changed the finding of the IAB. Defendants maintain that Sommers' report is clear that his opinion concerning causation is conditioned upon the assumption that there was occupational exposure. However, Plaintiff presented no facts about his alleged workplace exposure or the levels of said exposure.[46]

Plaintiff filed his Response on October 7, 2014. Plaintiff says that Defendants have mischaracterized the IAB's findings. Plaintiff argues that the primary reason why the IAB denied Plaintiff's claim was lack of "scientific evidence" of causation, not lack of evidence of occupational exposure.[47] Plaintiff argues that there was significant evidence of exposure given

---

[43] Hearing Transcript, April 3, 2014, Item 181, at 10
[44] Motion for Summary Judgment, Item 182.
[45] Motion for Summary Judgment, Item 182, at 2-3. The "threshold issue" language is Defendants'; the Board does not use this explicit terminology.
[46] Motion for Summary Judgment, Item 182, at 4.
[47] Response, Item 193, at 6.

at the hearing, including testimony from coworkers and customers regarding the visibility of the mold, the constant smell of mold and mildew, the flooding of the store when it rained, and the fact that employees sprayed the walls with bleach to try and prevent the mold from growing back.[48]

Further, Plaintiff suggests that any doubts that the Board might have had about the extent of the occupational exposure were due to Defendant Wilson's negligence in not presenting documentation from B-Dry, the company that performed the work to remedy the water leakage problem in the building prior to its purchase by its current owner.[49] The B-Dry documentation was not before the Board, and Plaintiff suggests that any doubts the Board had about the existence of a water leakage problem would have been assuaged by the evidence that the building had been treated by the B-Dry company.[50]

Plaintiff argues that if Sommers had been presented with the B-Dry evidence at the hearing, Sommers would have testified that there was exposure and causation.[51] In support of this view, Plaintiff offers deposition testimony of Sommers in the instant case. In the course of this testimony, Sommers says that, based on the testimony of the other witnesses, there is evidence to suggest that Plaintiff was exposed to higher than normal levels of mold and mildew.[52] Sommers also makes the statement that, "[i]t was my opinion then and it's my opinion now that [Plaintiff] clearly developed sarcoidosis in that this work conditions, which

---

[48] Response, Item 193, at 6.
[49] Response, Item 193, at 3-4. Plaintiff's argument here is that, had Sommers' been provided with the B-Dry evidence and been called to testify before the Board, then Sommers would have testified that there was exposure, which would have, in turn, been compelling to the Board. Plaintiff's position suggests, but does not explicitly state, that Defendant Wilson was negligent in not directly presenting the B-Dry evidence to the Board.
[50] Response, Item 193, at 3-4.
[51] Response, Item 193, at 4.
[52] Response, Item 193, at 3-4.

included chronic exposure to mold, mildew, and possibly some other particulate matter, may have contributed to the development of sarcoidosis."[53]

Hence, Plaintiff suggests that Defendant Wilson was negligent both in failing to present evidence of causation and in failing to present evidence of exposure to mold. Plaintiff suggests that Defendant Wilson's failure to do these things proximately caused the Board's denial of Plaintiff's claim.

### IV. LEGAL STANDARD

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[54] A motion for summary judgment, however, should not be granted when material issues of fact are in dispute or if the record lacks the information necessary to determine the application of the law to the facts.[55] A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[56] Thus, the issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[57]

Although the party moving for summary judgment initially bears the burden of demonstrating that the undisputed facts support his legal claims,[58] once the movant makes this showing, the burden "shifts to the non-moving party to demonstrate that there are material issues

---

[53] Response, Item 193, at 4.

[54] Super. Ct. Civ. R. 56(c).

[55] *Bernal v. Feliciano*, 2013 WL 1871756, at *2 (Del. Super. Ct. May 1, 2013) (*citing Ebersole v. Lowengrub*, 180 A.2d 467, 468 (Del. 1962)).

[56] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

[57] *Id.*

[58] *Hughes ex rel. Hughes v. Christina Sch. Dist.*, 2008 WL 73710, at *2 (Del. Super. Ct. Jan. 7, 2008) (*citing Storm v. NSL Rockland Place, LLC*, 898 A.2d 874, 879-80 (Del. Super. Ct. 2005)).

12

of fact for resolution by the ultimate fact-finder."[59] When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.[60]

## V. DISCUSSION

## A. Occupational Disease Defined

A compensable occupational disease must be caused by the specific nature of one's job, "as contrasted with diseases which might just as readily be contracted in other occupations, or in everyday life, apart from employment."[61]  "An ailment does not become an occupational disease merely because it is contracted on the employer's premises.  It must be one which is commonly regarded as natural to, inhering in… the work in question.  There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort."[62]  In order to establish an occupational disease claim, the claimant must present evidence both of exposure to occupation-related toxins and the causal link between this exposure and the claimant's injury.

In *Anderson v. General Motors*, the Delaware Supreme Court affirmed the Superior Court's holding that there was "insufficient evidence as a matter of law to sustain the employee's claim of having incurred an occupational disease, allergic rhinitis, from his employment at General Motors' Delaware assembly plant."[63]  Neither the claimant nor his treating physician had established that the working conditions produced claimant's aliment "as a natural incident of

---

[59]*Id.*
[60]*Joseph v. Jamesway Corp.*, 1997 WL 524126, at *1 (Del. Super. Ct. July 9, 1997) (*citing Billops v. Magness Const. Co.*, 391 A.2d 196, 197 (Del. Super. Ct. 1978)).
[61] *Air Mod Corp. v. Newton*, 215 A.2d 434, 442 (Del. 1965).
[62] *Id.* (*quoting Harman v. Republic Aviation Corp.*, 82 N.E.2d 785, 786 (1948)).
[63] *Anderson v. General Motors Corp.*, 442 A.2d 1359 (Del. 1982).

13

his occupation."[64]  While the physician opined that dust and fumes at the plant had "triggered" the claimant's condition, the physician lacked any personal knowledge of the working conditions at the General Motors plant or, more specifically, the level of dust and fumes."[65]

In *Turner v. Johnson Controls*, this Court found that the claimant had not met her burden of proving that there was a "reasonable link between her health conditions and her work environment" and affirmed the IAB's decision denying compensation.[66]  The claimant worked with a machine that produced lead batteries and was exposed to lead, acid, and oxides.[67]  However, there was no evidence that the claimant actually ingested the toxic fumes.[68]  The claimant was diagnosed with bronchitis and reactive airway disease.[69]  The IAB held that the claimant had failed to provide that her work conditions or the specific toxins to which she was exposed caused the illness.[70]  While the claimant's treating physician testified that occupational exposure may have exacerbated the claimant's breathing problems, the physician was not aware of the particular types of fumes to which the claimant had been exposed at work.[71]  The court held that the Board reasonably concluded that the claimant not met the burden of demonstrating a "recognizable link between the disease and some distinctive feature of claimant's job" and that "the ailment resulted from the peculiar nature of the employment rather than from [the claimant's] own peculiar predisposition."[72]

### B. Analysis

---

[64] *Id.* at 1361.
[65] *Id.*
[66] *Turner v. Johnson Controls*, 2011 WL 4688736, *3 (Del. Super. Ct. Sept. 26, 2011).
[67] *Id*. at *1.
[68] *Id*. at *3.
[69] *Id.* at *1.
[70] *Id.*
[71] *Id.*
[72] *Turner*, 2011 WL 4688736 at *3.

Plaintiff alleges that Defendant Wilson's failure to present Sommers' and/or Stainken's testimony at the IAB hearing—along with Defendant Wilson's failure to investigate, procure, and present evidence of remedial waterproofing done in the building—was a proximate cause of the Board's denial of Plaintiff's claim.[73]  Plaintiff suggests that the testimony of Sommers and/or Stainken would have provided evidence of causation that the Board found lacking.[74]  But, Plaintiff also appears to recognize that the Board's denial of his claim was also due to the Board's doubts about Plaintiff's exposure.[75]  Plaintiff suggests that the B-Dry waterproofing evidence would have assuaged the Board's doubts about exposure to mold and mildew, because the waterproofing evidence would have countered the testimony of Mr. Wilson and Dr. Montz that the building did not currently exhibit signs of a water problem.[76]

There is a fundamental defect with Plaintiff's claim as pled and as argued in the proceedings before this Court.  Plaintiff's arguments have focused on Defendant Wilson's alleged failure to present evidence of Plaintiff's occupational exposure to mold and mildew and of a causal link between exposure to mold/mildew and sarcoidosis.  However, exposure to mold from working in a tire store does not qualify as an occupational disease.  This is because mold from a leaky building is not a hazard "which is commonly regarded as natural to [or] inhering in" working in a tire store.[77]

Because mold and mildew are not hazards caused by the specific nature of working in a tire store, but are hazards that might just as readily be encountered in other occupations or in everyday life apart from employment, the Court finds that any alleged failure by Wilson to

---

[73] Amended Complaint, Item 171, at 10.
[74] Amended Complaint, Item 171, at 9-10.
[75] Amended Complaint, Item 171, at 5-6.
[76] Amended Complaint, Item 171, at 5-6.
[77] *Air Mod Corp. v. Newton*, 215 A.2d 434, 442 (Del. 1965).

present evidence related to mold/mildew is harmless error and not a proximate cause of Plaintiff's failure to prevail on his IAB claim.[78]

In order to prevail on his IAB claim, Plaintiff would have to have established both (a) occupational exposure to toxin(s) inherent to working in a tire store, and (b) proximate causation. Correspondingly, in order to prevail on his instant malpractice claim against Defendant Wilson, Plaintiff would have to show that Wilson was negligent in not presenting evidence of each of these. Plaintiff's allegations that Wilson was negligent in not presenting evidence related to the mold and mildew and/or not presenting evidence of a causal link between mold/mildew and sarcoidosis are irrelevant because mold and mildew cannot be the cause of an occupational disease under the circumstances.

Specifically, Defendant Wilson's failure to present the B-Dry evidence is harmless error because, even had this evidence convinced the Board that Plaintiff was exposed to mold and mildew, the Board could not have correctly found an occupational disease on this basis. Defendant Wilson's failure to present the testimony of Sommers and/or Stainken is similarly harmless. First, both Sommers and Stainken focus on mold and mildew and their possible causal connection to sarcoidosis. However, both Sommers and Stainken do also state that exposure to metal working, brake dust, tire dust, and other toxins specific to working in a tire store may also be triggers of sarcoidosis.[79] The problem is that, even if the Board had heard and accepted Sommers' and Stainken's testimony that tire-specific toxins cause sarcoidosis, the Board would still have needed some evidence that Plaintiff was exposed to these toxins. Evidence of exposure is something that Sommers and Stainken did not, and could not, provide. In fact, both Sommers

---

[78] *See, e.g., Walker v. State*, 2009 WL 1366278 (Del. Super. Ct. May 18, 2009) (*affirming* the IAB's determination that claimant had not demonstrated that illness from alleged exposure to mold that is ubiquitous in the natural environment was caused by alleged exposure at claimant's workplace).

[79] *See, e.g.*, Sommers Report at 7; Stainken Report at 9-10.

16

and Stainken make clear that their opinions are based on Plaintiff's own self-reported history of exposure to toxins, rather than any independent evidence of this exposure.[80] The case law is clear that the IAB requires evidence of the claimant's exposure and that a physician's testimony of causation that is based on the claimant's own self-reports of exposure is insufficient.[81]

In order to have a colorable claim against Defendants, Plaintiff would have had to allege that there was available evidence of exposure to toxins that, unlike mold and mildew, would be specific to working in a tire store and that Defendant Wilson was negligent in not presenting this evidence before the Board. Plaintiff has not done this. Plaintiff would then have had to demonstrate that Defendant Wilson's alleged failure proximately caused the Board's denial of Plaintiff's claim; in other words, Plaintiff would have to show that he had, or could have presented, adequate evidence that exposure to these occupational toxins caused Plaintiff's sarcoidosis.

In sum, both Wilson's alleged failure to present evidence that Plaintiff was exposed to mold and mildew and Wilson's alleged failure to present evidence that Plaintiff's exposure to mold and mildew proximately caused his sarcoidosis are harmless errors and did not proximately cause the Board's denial of Plaintiff's claim. Plaintiff has not alleged that Defendant Wilson had evidence of Plaintiff's exposure to toxins that would qualify as occupational in nature and a showing of such exposure is essential to Plaintiff's occupational disease claim. Without an allegation that Defendant Wilson could have presented evidence of occupational exposure, any

---

[80] *See, e.g.,* Sommers Report at 3; Stainken Report at 7.
[81] *See, e.g., Anderson v. General Motors Corp.*, 442A.2d 1359, 1361 (Del. 1982) (*affirming* the IAB's finding that physician's testimony of exposure, which was based solely on the claimant's self-reports was insufficient); *Sobolak v. Potts Welding & Boiler Repair Company, Inc.*, 2006 WL 1330104, *2-3 (Del. Super. Ct. May 12, 2006) (holding that the IAB's denial of compensation was supported by substantial evidence when the evidence of exposure was limited to the claimant's own testimony on which the claimant's medical expert relied).

17

other alleged errors by Defendant Wilson are harmless.  Summary Judgment for Defendants is hereby **GRANTED**.

## VI. CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

_____/s/_____
**M. JANE BRADY**
Superior Court Judge