**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| BARRY MULLINS (DECEASED), | ) | |
| | ) | |
| Claimant-Below, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | C.A. No. N23A-01-004 CLS |
| | ) | |
| CITY OF WILMINGTON, | ) | |
| | ) | |
| Employer-Below, | ) | |
| Appellee. | ) | |
| | ) | |

Date Submitted: May 25, 2023
Date Decided: August 18, 2023

*Upon Appellant's Appeal from the Order of the Industrial Accident Board.*
**AFFIRMED.**

## ORDER

Walt F. Schmittinger, Esquire, and Gary E. Junge, Esquire, Schmittinger & Rodriguez, P.A., Dover, Delaware, 19903, Attorney for Claimant Below-Appellant.

Nicholas E. Bittner, Esquire, Heckler & Fabrizzio, Wilmington, Delaware, 19899, Attorney for Employer-Below/Appellee.

**SCOTT, J.**

## INTRODUCTION

Before this Court is Appellant Barry Mullins' ("Claimant") appeal from the decision of the Industrial Accident Board ("Board"). The Court has reviewed the parties' submissions. For the following reasons, the Board's decision is **AFFIRMED.**

## BACKGROUND

The Claimant-Below/Appellant, Barry Mullins (deceased), (hereinafter "Claimant"), was diagnosed with ocular melanoma in 2010 and passed away on April 19, 2021. Claimant's widow, Melissa Mullins, (hereinafter "Mrs. Mullins") filed a Petition with the Industrial Accident Board (hereinafter the "Board") on April 22, 2022, seeking workers' compensation survivor benefits, based upon the City of Wilmington Pension Code (hereinafter the "Code").

On December 8, 2022, a Hearing before the Board took place. Mrs. Mullins testified on behalf of Claimant. She testified it was her understanding the disability pension would be an untaxable benefit. She was allegedly unaware about any paperwork completed in the April 2021 timeframe, including an April 16, 2021, letter where information was completed with the intention to apply for a disability pension as per the Code. The City of Wilmington (hereinafter the "Employer") called Bruno Battaglia (hereinafter "Mr. Battaglia") to testify, and it also relied upon the deposition testimony of Dr. John Parkerson. Mr. Battaglia testified he does not

2

have any say or input in disability pensions in his capacity as it relates to workers' compensation matters. Disability pensions are completely separate from whether the Employer approves a workers' compensation claim. Further, the Code is not even considered when assessing the validity of an alleged workers' compensation claim. Mr. Battaglia stated he was not aware of the City ever accepting or being instructed to accept a workers' compensation claim on the basis of the Code. Usually when alleging a workers' compensation claim, an employee will notify the City Dispensary if the injury is alleged to be work related, and the Dispensary then starts an investigation.

As for Claimant's workers' compensation claim, the Employer was not made aware he was seeking such benefits until the Petition was filed. Mr. Battaglia also testified the April 14, 2021, letter relating to a disability pension would not trigger anything leading Claimant to believe he is entitled to workers' compensation benefits. A City employee can receive a service-related disability pension without having a corresponding workers' compensation claim. Lastly, he confirmed the Code only applies to pensions, and not to workers' compensation claims.

Dr. Parkerson testified via deposition on behalf of the Employer. Claimant had a tumor of his eye that spread to his liver, and the progression of the tumor was the ultimate cause of his demise. Dr. Parkerson was not able to identify any scientific or medical studies that correlate employment as a police officer with development

3

of ocular melanoma. A review of medical literature did not show anything that mentioned police officers having increased risk of ocular melanoma. Dr. Parkerson testified to a case study regarding firefighters in the United States; this study was relevant to the case at hand, because when considering causation, one looks at other groups of people that may be similarly affected. The study involves 30,000 firefighters and focused on incidence of cancer, and yet not a single case of ocular melanoma was identified.

Dr. Parkerson also testified when looking at scientific studies which document correlation between occupation and ocular melanoma, there was no mention of any police officers with ocular melanoma. Dr. Parkerson concluded Claimant's work as a police officer did not place him at a greater risk than the general public for developing ocular melanoma. He did not believe Claimant's cause of death was related to the employment as a police officer. He also testified he never saw a record from a treating physician or anyone else which related the condition to his employment as a police officer.

The Board issued a Decision on December 30, 2022 (hereinafter the "Decision"). The Board found Claimant failed to prove entitlement to workers' compensation benefits in relation to his death from ocular melanoma, the Board discussed and considered Claimant's argument, in which he contended the City's decision to classify his pension as a disability pension versus a regular pension was

4

an admission the ocular melanoma was causally related to his work as a police officer. The Board found Claimant did not offer any medical testimony demonstrating an actual relationship between his cancer and his work. While Claimant argued the Employer is estopped from challenging the causal relationship in the pending workers' compensation claim, due to the decision made under the Code, the Board found this unavailing. The Board explicitly found Claimant failed to prove a causal relationship between the ocular melanoma that led to his death and his work as a police officer. The Board also found the City's decision to grant a disability pension to Mr. Mullins did not preclude the Employer from arguing in a workers' compensation case that the cancer was not related to Mr. Mullins' work as a police officer. The Board also noted there are likely reasons for not challenging a disability pension, which are unrelated to whether the condition was actually related to the employment. The Board concluded by ruling Claimant failed to prove entitlement to workers' compensation benefits in relation to his death from ocular melanoma while employed as a City police officer.

Following the Board's Decision, on January 25, 2023, Claimant filed the instant appeal, challenging the Board's Decision as to its finding of Claimant's failure to prove entitlement to workers' compensation benefits due to the ocular melanoma. Claimant argues the Board erred by not giving weight to the Employer's decision to award and subsequently pay disability pension based on the "unrebutted

5

presumption that the ocular cancer was an injury incurred in the line of duty" and the Board erred by relying on assumptions regarding the Employer's rationale for awarding a disability pension.

**STANDARD OF REVIEW**

On appeal from the Industrial Accident Board, the Superior Court must determine if the Board's factual findings are supported by substantial evidence in the record and free from legal error.[1] In reviewing the actions of the agency, the Court is required "to search the entire record to determine whether, on the basis of all the testimony and exhibits before the agency, it could fairly and reasonably reach the conclusion that it did."[2] The Court does not "weigh evidence, determine questions of credibility or make its own factual evidence findings."[3] When a discretionary ruling of the Board is appealed, the Court's scope of review is "limited to whether the Board abused its discretion."[4] The Court reviews the agency's legal determinations *de novo*.[5]

---

[1] *Bedwell v. Brandywine Carpet Cleaners*, 684 A.2d 302, 304 (Del. Super. 1996) (*citing General Motors Corp. v. Freeman*, 164 A.2d 686, 688 (Del. 1960)).
[2] *Nat'l Cash Register v. Riner*, 424 A.2d 669, 674–75 (Del.Super.1980).
[3] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 67 (Del.1965).
[4] *Funk v. Unemployment Ins. Appeal Bd.*, Del.Supr., 591 A.2d 222, 225 (1991).
[5] *Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016); *Munyan v. Daimler Chrysler Corp.*, 909 A.2d 133, 136 (Del. 2006).

## DISCUSSION

The main issue before this Court is whether the Board erred as a matter of law in not considering by not giving weight to the Employer's decision to award and subsequently pay disability pension in this matter involving the Worker's Compensation Act. Claimant cites *Hirneisen v. Champlain Cable Corp.*[6] as support in this argument. In *Hirneisen*, it was not disputed the claimant's death was related to his employment – specifically, exposure to asbestos.[7] The sole dispute was whether benefits to the surviving spouse were wage replacement benefits or if they were available even when the claimant was not working or earning wages at the time of death.[8] That issue does not relate to whether a pension determination is binding to satisfy causation under the Workers' Compensation Act.

The most relevant decision was a prior Board Decision, *Armstead v. City of Wilmington*[9]. Armstead explains: "Employer's Pension Code does not set the legal standard for causation that this Board must follow[.]"[10] In this case, the Board agreed with the reasoning in *Armstead*, finding Delaware has not enacted a legal presumption of causation involving terminal cancers. Instead, the Employer's decision to "[enact] such a rebuttable presumption in its pension code reflects a

---

[6] 892 A.2d 1056 (Del. 2006).
[7] See *id.* at 1058.
[8] See *id.*
[9] IAB No. 1485578 (May 6, 2021).
[10] *Id.*, at *27.

contractual-type arrangement between the City and its police officers that applies to pension classification."

The Board's comment in *Armstead* about the Code not meeting the standard set forth in the Workers' Compensation Act mirrors *Jarman v. Willow Grove Meats*.[11] In *Jarman*, this Court supported the Board's refusal to consider evidence from the Social Security Administration in deciding a question of total disability because Social Security used a different standard for deciding disability than the standard used by the Board, the Board was free to disregard same.[12] This mirrors the Board's rationale here in deciding not to apply the Code to a finding of causation under the Act. Establishing causation of a work-related occupational disease for purposes of receiving workers' compensation benefits requires evidence "the employer's working conditions produced the ailment as a natural incident of the employee's occupation in such a manner as to attach to that occupation a hazard distinct from and greater than the hazard attending employment in general."[13] Anything falling short of this standard fails to satisfy the legal requirements of causation under the Act. As such, there was no legal error in the Board's decision to not apply causation from the Code to support causation under the Act.

---

[11] 1994 WL 146031 (Del. Super. Mar. 30, 1994), aff'd 650 A.2d 1306, 1994 WL 525089 (Del. Sept. 16, 1994).
[12] *Id.* at *8.
[13] *Anderson v. General Motors Corp.*, 442 A.2d 1359, 1361 (Del. 1982).

Secondarily, Claimant argues the Board erred by relying on assumptions regarding the Employer's rationale for awarding a disability pension. This argument stems from the Board's comment that "Chief Tracy cited the presumption provided by the City pension code in awarding the disability pension, but he did not indicate whether the City attempted to rebut the causation presumption or considered any medical evidence in making the pension decision." The footnote in connection with this comment mentioned that the City may not have any motivation to deny a disability pension in this situation and the City may have chosen not to challenge the presumption so Mrs. Mullins could receive a tax benefit, not because of the actual causal relationship between the injury and Mr. Mullins' job. Such comment and footnote served as nothing more than an explanation that the workers' compensation act standard is different than that of the pension decision. There is nothing to suggest the pension decision should be considered when the Board determined the issue before, in fact, it suggests the opposite: that it should not be taken into account, which was the outcome. As such, there is no error of law associated with the Board's comment.

## CONCLUSION

For the foregoing reasons, the Board's decision is **AFFIRMED.**

**/s/ Calvin L. Scott**
**Judge Calvin L. Scott, Jr.**